# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


**HUBERT LUSK JR.,**

       **Petitioner,**

**v.**　　　　　　　　　　　　　　　　　**Civil Action No. 2:10cv5**
　　　　　　　　　　　　　　　　　　　　**(Judge Maxwell)**

**DAVID BALLARD, Warden,**

       **Respondent.**


## OPINION/REPORT AND RECOMMENDATION

### I.　Factual and Procedural History

**A.　Petitioner's Federal Habeas Proceedings**

On January 14, 2010, the *pro se* petitioner, Hubert Lusk Jr., filed a motion under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. On January 29, 2010, the undersigned ordered the respondent to show cause on the limited issue of the timeliness of the petition. The respondent filed a MOTION TO DISMISS PETITION AS UNTIMELY FILED ("Motion to Dismiss") on March 1, 2010. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.15 et seq.

**B.　Petitioner's State Court Conviction and Sentence**

On June 4, 2001, the petitioner was the sole individual named in two single count indictments returned by a grand jury sitting in Ritchie County, West Virginia. The first indictment charged the petitioner with the first degree murder of Frances Dale "Sonny" McDonald ("McDonald"). See Indictments (Resp. Ex. 1, dckt. 14-1) at 2. The second indictment charged the petitioner with the first

degree murder of Rhonda Lee Lusk ("Mrs. Lusk"). *Id*. at 4.

On September 12, 2001, the petitioner signed a plea agreement whereby he agreed to plead guilty to "Murder in the Second Degree" for the murder of McDonald. <u>See</u> Written Plea Bargain Agreements and Associated Documents (Resp. Ex. 2, dckt. 14-2) at 4. On that same day, the petitioner signed another plea agreement whereby he agreed to plead guilty to "Murder in the First Degree – With a Recommendation of Mercy" for the murder of Mrs. Lusk. *Id*. at 13. Both plea agreements recommended that the sentences imposed run concurrently. *Id*. at 4, 13.

Also on September 12, 2001, the petitioner and his attorney each signed two affidavits detailing what procedure and substance they discussed relevant to the plea agreement. *Id*. at 9-13, 21-25. Most significantly, in his affidavits, the petitioner affirmed that his mind was "clear" during the signing of the plea agreement, that he had never been treated for mental illness, and that he was currently not being treated by a doctor.[1] *Id*. at 10, 22. The affidavits also affirm that the petitioner was aware of the nature of the crimes to which he was pleading guilty, as well as the associated penalties. *Id*. They further state that the petitioner was satisfied with the performance of his attorney, that his attorney had not left anything undone, and that he was aware that he did not have to plead guilty, regardless of his attorney's advice. *Id*. at 11, 23. Finally, the petitioner's affidavits show that he was aware that once his plea was entered it could not be withdrawn. *Id*. at 13, 25.

The court held a plea hearing on September 12, 2001. During that hearing, the petitioner's attorney put the court on notice that but for the petitioner's signature, the plea agreements and the affidavits in support of those plea agreements were not in the petitioner's handwriting. <u>See</u>

---

[1]The court notes that the petitioner's affidavits reflect that the answers were his own, but that the document was not filled out in the petitioner's own handwriting. *Id*. at 13, 15.

Transcript of Plea Hearing of September 12, 2002 (Resp. Ex.11) at 2-3. The petitioner attested to the fact that he signed those plea agreements and the affidavits in support of those agreements. *Id*. The court engaged in a colloquy with the petitioner whereby the petitioner re-affirmed that he was fully satisfied with his attorney, that his attorney had left nothing undone, and that his attorney had been available to him since the filing of the charges. *Id*. at 5-6. He also re-affirmed that he had only a seventh grade education and that he could not read or write very well. *Id*. at 6. The court verified that petitioner's attorney had read and explained each of the plea documents to him and that the petitioner had provided the answers to his attorney to write on the forms. *Id*. at 6-7.

During the plea hearing, the petitioner affirmed that he was of "clear mind," that he was not under treatment for a mental condition, that he had never been diagnosed with a mental condition, and that he had never been involuntarily hospitalized for a mental condition. *Id*. at 7-8. The court further verified with the petitioner that he had not been coerced or forced into signing the plea agreements and that he made the agreements "knowingly and voluntarily." *Id*. at 8. The court next asked a series of detailed questions regarding the charges, the punishments, and the constitutional rights that the petitioner would be giving up by pleading guilty, to which the petitioner demonstrated understanding. *Id*. at 9-19.

The court found that the petitioner made his pleas knowingly and voluntarily and accepted the petitioner's oral and written pleas of guilty. *Id*. at 20-21. The court thereafter sentenced him to life imprisonment with mercy for the first degree murder of Rhonda Lee Lusk. The Court had no discretion in that sentence. *Id*. at 21-22. Because of statutory discretionary requirements, however, the Court ordered a presentence investigation and scheduled a sentencing hearing for the second degree murder charge. *Id*. at 20.

On November 19, 2001, two days prior to his sentencing hearing, the petitioner filed[2] three *pro se*[3] motions with the court. <u>See</u> *pro se* Handwritten Motions (Resp. Ex. 5, dckt. 14-5). The petitioner's first motion requested that the court order a psychiatric exam in order to determine his "competency to answer [the] charges." *Id*. at 2. The second motion was a request to withdraw his guilty plea. *Id*. at 4. The third motion requested that the court allow him to terminate his retained counsel and to provide him with appointed counsel. <u>See</u> Orders Accepting Pleas (dckt 14-1). at 6.

The court held a sentencing hearing on November 21, 2001. At the outset, the court asked the petitioner if he would like to address the court. <u>See</u> Transcript of Sentencing Hearing of November 21, 2002 (Resp. Ex. 6, dckt 14-6) at 2. The petitioner declined. *Id*. Next, the petitioner's attorney brought the petitioner's *pro se* motions to the court's attention. *Id.* at 4. The court made note of the motions and specified that they would be taken up after sentencing. *Id.* The petitioner was thereafter sentenced to forty years imprisonment. *Id*. at 5. This sentence was imposed concurrent to the petitioner's prior sentence for first degree murder. *Id*. Once the sentence was imposed, the court addressed the petitioner's *pro se* motions. *Id*. Noting that the petitioner had neither properly noticed the state, nor timely filed the motion with the court, the judge advised the petitioner that the motions were "lodged" with the clerk until those issues were remedied *Id*.

**C.   <u>Direct Appeal</u>**

The petitioner did not file a direct appeal of his convictions and sentences.

**D.   <u>Petitioner's State Court Post Conviction Proceedings</u>**

On August 19, 2004, the petitioner filed a state habeas petition in which he asserted two

---

[2]Whether those motions were *properly* filed is discussed later.

[3]The Court notes that the petitioner had retained counsel at the time.

grounds for relief.[4] See State Habeas Corpus Petition (Resp. Ex. 7, dckt. 14-7) at 4. First, he asserted that his plea was involuntarily made; that the court failed to conduct an evidentiary hearing regarding the petitioner's mental capacity; that the court erred by ignoring his *pro se* motion to withdraw his plea; and that the court failed to allow him an opportunity to appeal his case.[5] *Id*. Second, he put forth that he was denied effective assistance of counsel during the trial. *Id*.

Just over four years later, on December 12, 2008, the state court held an evidentiary hearing on the petitioner's state habeas petition. See Transcript of Evidentiary Hearing in State Habeas Proceeding (Resp. Ex. 10, dckt 14-10). During that hearing, the court reviewed the record and found petitioner voluntarily made his plea and that there was nothing on the record that indicated a lack of capacity. *Id*. at 29-32. Further, the court found that the petitioner's *pro se* motions to withdraw his plea and for a competency examination were not timely filed and that the deficiencies noted by the trial court were not remedied by the petitioner. *Id*. at 33. The court also examined the substance of the petitioner's *pro se* competency motions and found that the petitioner had not meet his burden of proof. *Id*. at 34.

The court went on to find that the petitioner's claim of ineffective assistance of counsel and motion to withdraw his pleas of guilty were not well taken. *Id*. Notably, the court pointed out that the petitioner's retained trial counsel was not permitted to testify at the habeas evidentiary hearing because the petitioner would not allow an exception to the attorney-client privilege. *Id.* at 34. Based

---

[4]The first ground is actually comprised of four separate assertions.

[5]Though asserted in ground one of the petitioner's state habeas petition, the petitioner put forth no facts to support this particular claim. See dckt. 14-7 He did, however, urge that he was unable to appeal for financial reasons and because his attorney had failed to file a notice of intent to appeal. *Id*. at 3. He did not, however, allege that he requested his attorney so file. *Id*.

upon the record and the proceedings, the court determined that the petitioner's trial counsel was competent and that the plea agreements were very favorable. *Id*. The court also pointed out that the petitioner did not bring forth the issues of effectiveness of counsel or plea withdrawal until after the pleas were entered. *Id*.

Finally, the court found that there was no evidence that the petitioner directed his trial counsel to appeal his sentences. *Id*. Moreover, the court underscored the fact that the petitioner had been advised that under the plea agreement, he could appeal only on the basis of error of the court, rather than dissatisfaction with his sentence. *Id*. at 35. Based upon its findings from the record and the evidentiary hearing, the court denied the "Losh versus McKenzie habeas hearing . . . in its entirety." *Id.* The court then advised the petitioner that he could appeal the denial to the West Virginia Supreme Court of Appeals and that he could request appointed counsel. *Id*. The petitioner requested and was granted counsel. *Id*. at 36.

The petitioner's appeal of the denial of his state habeas petition was filed with the West Virginia Supreme Court of Appeals on July 1, 2009. See Petition for Appeal of State Habeas Denial, and Order "Refusing" said Petition (Resp. Ex. 9 dckt 14-9) at 2. The West Virginia Supreme Court of Appeals refused the petition on November 19, 2009. *Id*.

**E.   Federal Habeas Corpus Petition**

**Petitioner's Contentions (dckt. 1)**

Petitioner alleges the following four grounds for relief in his § 2254 habeas petition:

(1)    Ineffective assistance of trial counsel.

(2)    Failure of the trial court to review petitioner's motion for psychiatric exam and motion for withdrawal of guilty pleas.

(3)     Ineffective assistance of habeas counsel.

(4)     Further grounds asserted in prior state habeas petition.

The petitioner also asserts two grounds related to the timeliness of his § 2254 petition:

(1)     His lack of legal skill and difficulty in obtaining legal assistance has hindered his efforts; and

(2)     He detrimentally relied on the advice of the trial court and did not appeal his guilty plea.

**Government's Response (dckt. 14)**

As ordered by the undersigned in the ORDER DIRECTING THE RESPONDENT TO SHOW CAUSE ON THE LIMITED ISSUE OF THE TIMELINESS OF THE PETITION, the respondent has filed a motion to dismiss the petition as untimely filed (dckt. 14). In the motion, the respondent argues that:

(1)     The petitioner's § 2254 petition is not timely filed.

(2)     The petitioner's § 2254 petition is not salvaged by equitable tolling.

    (a)     The petitioner's lack of legal knowledge does not trigger equitable tolling.

    (b)     The petitioner's claim that the trial court incorrectly advised him as to his appeal rights does not trigger equitable tolling.

## II.   Analysis

**A.   Timeliness of the petitioner's § 2254 motion**

At the outset, it is important to underscore that "'however inartfully pleaded,' [a *pro se* document] must be held to 'less stringent standards than formal pleadings drafted by lawyers' . . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976)(quoting Haines v. Kerner, 404 U.S. 519 (1972)).

Nevertheless, the gateway issue to resolve before discussing the merits of a § 2254 habeas petition is whether it has been timely filed with the court. "If the petition is barred by the statute of limitations, the Court need not address the substantive issues raised in the petitioner's Writ of Habeas Corpus" Thomas v. McBride, No. 1:05CV46, 2005 U.S. Dist. LEXIS 39103, at *9–10 (N.D.W. Va. Dec. 23, 2005).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth a one-year limitation within which a state prisoner may file a petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1); Harris v. Va. Dep't of Corr., 282 Fed. Appx. 239, 241 (4th Cir. 2008). The AEDPA also specifies the four conditions which trigger the one year period of limitation:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In the Motion to Dismiss, the respondent asserts that the petitioner has not claimed that any of the dates established in § 2244(d)(1)(B)-(D) apply to his petition. The Court agrees, and will

examine the petitioner's claims in light of section (A) only. Thus, the Court will determine whether the petitioner filed his § 2254 petition within one year from the date on which the state court judgment became final by the conclusion of "direct review or the expiration of the time for seeking such review." *Id*.

### A. AEDPA Time Limit

As detailed above, the record shows that the petitioner was convicted of two separate and distinct murders pursuant to the binding plea agreements he signed. The matters were joined for the purposes of trial. See Petition for Appeal (Resp. Ex. 9) at 7. A sentencing order for the murder of Mrs. Lusk was entered on October 7, 2002. See (Resp. Ex. 3, dckt. 14-3). The court later entered the final sentencing order, for the murder of Mr. McDonald, on November 21, 2002. See (Resp. Ex. 4, dckt. 14-4).

In the State of West Virginia, a petition for appeal "must be filed with the clerk of the circuit court where the judgment, decree, or order being appealed was entered within four months of the entry of the circuit court order." W. Va. R. Crim. P. 37(b)(3). Thus, the window of opportunity for the petitioner to appeal his convictions ended four months after the November 21, 2002 final sentencing order. The petitioner did not appeal his convictions in that time frame. Consequently, the petitioner's convictions became final on March 21, 2003, and under the AEDPA, he had until March 20, 2004 to bring a § 2254 claim in Federal Court.[6] The petitioner filed his § 2254 habeas petition on January 14, 2010, almost six years after the statutory period had expired.

### B. Statutory Tolling

---

[6]Due to the 2004 leap year, February had twenty-nine days, thus the date that the AEDPA one-year time limit ended was March 20, 2004 as opposed to March 21, 2004.

However, under the AEDPA, "[the] one-year period is tolled while a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.' § 2244(d)(2)." Harris, 282 Fed. Appx. at 241. The petitioner filed three *pro se* motions, unbeknownst to his retained counsel, on November 19, 2002, two days prior to his sentencing hearing.[7] These motions were neither post-conviction nor collateral and thus did not toll the AEDPA one-year limitations period.[8]

After his conviction became final on March 21, 2003, the petitioner filed a state habeas petition 517 days later on August 19, 2004. See dckt. 14-7, 14-8, 14-9, 14-10. The AEDPA time limitation period had already expired by that date, therefore the state habeas petition could not toll the one-year limitations period, as there was nothing left to toll at that time. See Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (state court petition filed after the expiration of the limitations period "cannot toll that period because there is no period remaining to be tolled"). Accordingly, the undersigned finds that the petition is clearly untimely unless the petitioner can show that the petition can be salvaged by the doctrine of equitable tolling.

**C.  Equitable Tolling.**

The Supreme Court has recently ruled that "the timeliness provision in the federal habeas corpus statute is subject to equitable tolling."  Holland v. Florida, No. 09-5327, 2010 U.S. LEXIS

---

[7]The state court found the motions to be neither timely filed nor properly noticed to the state. Consequently, the court "lodged" the motions with the clerk, and advised the petitioner to remedy the filing errors if he wanted his claims to be heard. See dckt. 14-6 at 5. There is nothing on the record indicating that the petitioner pursued the motions any further and his case was closed on November 21, 2002.

[8]As outlined above, the petitioner's sentencing hearing was on November 21, 2002. The judgment order came down on the same day.

4946, at *7 (June 14, 2010).[9] "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 2010 U.S. LEXIS 4946, at *30 (quoting Pace v. DiGuglielmo, 544 U.S. 408, at 415 (2005)).

Prior to Holland, the Fourth Circuit applied equitable tolling to extraordinary circumstances such as "those rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). In other words, the Fourth Circuit's "extraordinary circumstance" test required a petitioner to show "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse v. Lee, 339 F.3d 238, 251 (4th Cir. 2003)(restating Harris 209 F.3d at 330).

In Holland, the petitioner made repeated efforts to remind his attorney that his habeas petition needed to be timely filed. Syl. Holland 2010 U.S. LEXIS 4946, at 1-2. Nonetheless, his attorney filed his § 2254 petition late after having failed to properly research the tolling date. *Id*. Holland's attorney also failed to update the petitioner with crucial information regarding the date his state court conviction became final, thus limiting Holland's ability to pursue the matter with different counsel or *pro se*.[10] *Id*. The petitioner asked the federal district court to equitably toll the AEDPA limitations

---

[9]The respondent observed in its motion to dismiss for timeliness, that the Supreme Court had taken up this issue, but not yet ruled on it. Since the motion was filed, however, the Supreme Court has issued its opinion and this Court now follows that binding precedent.

[10]The petitioner did the legal research for his attorney, but the attorney apparently disregarded what he had been given by his client. Syl. Holland 2010 U.S. LEXIS 4946, at 1-2. Moreover, the petitioner seemingly recognized the deficiencies in his appointed counsel and moved to have him replaced. The state court did not grant him new counsel. *Id*.

period in light of his attorney's sustained professional misconduct. The court denied his request, stating that the facts of the petitioner's case did not amount to "extraordinary circumstances." *Id.*

The Supreme Court found differently. The court held as too rigid the Eleventh Circuit rule that "attorney conduct that is 'grossly negligent' can *never* warrant tolling absent 'bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." Holland, 2010 U.S. LEXIS 4946, at *30 (quoting Holland v. Florida, 539 F.3d 1334, at 1339 (11th Cir. 2008))(emphasis added). The Supreme Court reasoned that "courts of equity can and do draw upon decisions made in other similar cases for guidance . . . but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case," contrasting the Eleventh Circuit's "rigid rules" applied on a "*per se*" basis. *Id.* at 31-33.

Although Holland narrows the test for equitable tolling somewhat, the Fourth Circuit's "extraordinary circumstance" test for equitable tolling, as set forth in Harris, remains virtually unchanged. The Harris rule is not "rigid" or mechanical like the rule struck down by the Supreme Court in Holland. Rather, Harris is harmonious with Holland's requirement that a court of equity examine the facts of each case to make a fairness decision, thus avoiding the "evils of archaic rigidity." Holland, 2010 U.S. LEXIS 4946, at *31 (internal citations omitted). What's more, Holland's focus on petitioner conduct, through the addition of the diligence element, confirms that the Harris rule rightly attenuates courts of equity by preventing the loss of "the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation." Harris, 209 F.3d at 330.

Thus, reading Holland and Harris together, in order to establish an entitlement to equitable tolling, a petitioner must show that (1) he has been diligently pursuing his rights and (2) some

extraordinary condition external to his own conduct made timely filing impossible if he is to benefit from the doctrine of equitable tolling.

### 1.   Extraordinary Circumstances

Here, the petitioner asserts two grounds upon which equitable tolling should be granted. First, he implies that his limited familiarity with the law, his lack of an attorney, as well as his functional illiteracy, prevented him from timely filing his petition.[11] Second, he states that he did not timely appeal his original conviction because the sentencing judge told him that he had no right of appeal. On this ground, the petitioner also notes that his attorney did not object to the judge's comments, and that the petitioner lacked the legal skill to deal with the objection himself. He urges the combination of these facts explain why he did not file a direct appeal of his state court conviction, and thus why he could not timely file his § 2254 petition.

### Legal Skill and Lack of Legal Assistance

Throughout his § 2254 petition, and the record, the petitioner makes note of his functional illiteracy and his inability to find reliable post-conviction legal assistance. See *e.g.* dckt. 1 at 11, 14-15.  Specifically, he calls attention to the fact that he has completed only a fifth to seventh grade education and that he has had difficulty with the legal assistance allowed within the prison system. *Id*. Similarly, the petitioner goes to great lengths to highlight the difficulties associated with obtaining legal assistance from within the prison system. In particular, he notes that prison legal aides are untrustworthy and that so-called "jailhouse lawyers" are dissuaded from providing help to other inmates, further inhibiting his progress.

---

[11]While this ground is not directly asserted by the petitioner, it colors his petition to such an extent that the Court will take it up as a separate ground.

"There is no constitutional right to an attorney in state post-conviction proceedings." Coleman v. Thompson, 501 U.S. 722, 752 (1991). Nor is there such a right during post-conviction proceedings in federal court. Rouse, 339 F.3d at 250 (holding that error due to ineffective assistance of counsel, when no constitutional right to counsel exists, is attributed to the petitioner and is thus not external to his own conduct.). What's more, in the Fourth Circuit, a *pro se* petitioner's "ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004)(holding that a *pro se* petitioner's "misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to his control.").

Further, access to legal materials or even an attorney's "innocent misinterpretation" of the statute's time limit are unavailing arguments in favor of equitable tolling. Harris, 209 F.3d 330-31. Finally, courts "will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." Sosa, 364 F.3d at 513. Read together, these opinions stand for the proposition that neither a *pro se* petitioner's ignorance of the law, nor his limited access to counsel/legal resources or his mental condition, barring "profound" issues, justify equitable tolling.

The record shows no "profound" mental incapacity attributable to the petitioner. Rather, the record shows that the he was alert, responsive, and comprehended the plea proceedings.[12] When asked whether he understood all the questions during the plea hearing, and whether he was truthful in his answers, the petitioner responded yes. See dckt. 14-11 at 16. When queried as to his mental health, the petitioner verified that he was not currently nor had he ever been treated or diagnosed with a mental disease or defect. See dckt. 14-2 at 10, 22; dckt. 14-11 at 9. Although petitioner makes

---

[12]The state court came to the same conclusion during its habeas evidentiary hearing as well as on appeal of the same. See dckt. 14-10 at 35; dckt. 14-8 at 5.

clear that he has difficulty reading and writing, he affirms that his attorney read and explained the plea agreement to him and that his attorney also helped him complete the plea affidavits. See dckt. 14-11 at 8. In short, despite his literacy issues, there is no evidence that the petitioner suffered from profound issues of mental capacity during the proceedings.[13]

The reason for the delay in filing a habeas petition must be external to the petitioner. See *e.g.* Goedeke v. McBride, 437 F. Supp. 2d 590 (S.D.W. Va. 2006)(holding that an attorney's outright false assurances he was representing his client was worse than abandonment and that such egregious behavior by the attorney was external to the petitioner and thus justified equitable tolling of his otherwise untimely federal habeas petition.). None of the reasons cited by the petitioner rise to the level of "extraordinary circumstances" *external* to him which prevented him from timely filing his § 2254 petition.[14] As noted above, inexperience with the law does not trigger equitable tolling. Moreover, the petitioner has presented no evidence that he suffers from any "profound" issues of mental incapacity. Finally, the right to counsel during post-conviction proceedings is not constitutionally guaranteed, and consequently the petitioner's inability to gain legal assistance within the confines of the jail does not trigger equitable tolling. Thus, the petitioner's one year limitations period cannot be equitably tolled on this ground.

### Erroneous Appeal Rights Advice

---

[13]One of the *pro se* motions that the petitioner attempted to file with the state court requested a psychiatric exam . See (Resp. Ex. 10, dckt 14-10) at 33. The state court took up the issue of the petitioner's mental competency at the state habeas hearing. See (Resp. Ex. 8, dckt 14-8) at 3-4. The court concluded that, based on the record, the petitioner had shown no indication of incompetence or lack of comprehension throughout the proceedings. *Id*.

[14]The court also notes that despite the petitioner's apparent difficulty in obtaining legal assistance from within the jail, he has managed to file several petitions with the court since 2004. This diminishes the petitioner's contention that he was unable to timely file due to lack of assistance.

As the respondent concedes in his motion to dismiss, during the colloquy the court advised the petitioner that his guilty pleas constituted non-appealable rulings under West Virginia law. The petitioner argues that this advice denied him his "right to appeal" his conviction. Moreover, he contends that because his attorney did not object to the judge's statement, and because he lacked the skill or knowledge to object to it himself, he is due equitable tolling of his subsequent § 2254 petition.[15]

In West Virginia, "[t]he defendant in a criminal action may appeal to the Supreme Court of Appeals from a final judgment of any circuit court in which there has been a conviction or which affirms a conviction obtained in an inferior court." W. Va. Code § 58-5-1. "However, there is no right to be *heard* on appeal in the Supreme Court of Appeals, that court having the discretion to grant appellate review. W.Va.Const. art. 8, § 6." Wright v. Boles, 303 F. Supp. 872, 873 n.1 (N.D.W.Va. 1969)(emphasis added). In short, there is no right of appeal in the state of West Virginia. Rather, there is merely a right to petition for appeal.

What's more, "an appeal ordinarily does not lie from a judgment entered on a plea of guilty." State ex rel. Wright v. Boles, 141 S.E.2d 76, 77 (W. Va. 1965)(overruled on other grounds by Call v. McKenzie 220 S.E.2d 665 (W. Va. 1975)). However, "a direct appeal from a criminal conviction based on a guilty plea will lie where an issue is raised as to the voluntariness of the guilty plea or the legality of the sentence." State v. Sims, 248 S.E.2d 834, 837 (W. Va. 1978). Therefore, in West Virginia, a plea of guilty forecloses any appellate review in all but the limited circumstances of involuntary or unknowingly made pleas.

_____

[15]The Court notes that the petitioner did not make the argument that the court improperly advised him of his appeal rights during his state habeas proceedings.

In order to ensure the voluntariness of the plea, as part of the criminal plea procedure "the trial judge *should* interrogate [the] defendant on the record with regard to his intelligent understanding of the following rights, some of which he will waive by pleading guilty: . . . 7) the right to appeal the conviction for any errors of law . . . 9) the right to challenge in the trial court and on appeal all pre-trial proceedings." Syl. Pt. 3, Call v. McKenzie, 220 S.E.2d 665 (W. Va. 1975)(emphasis added). Finally, once a plea has been taken and "*[a]fter imposing sentence* in any case, the court *must* advise the defendant of any right to appeal the sentence . . . ." W. VA. R. CRIM. P. 32(c)(5)(emphasis added).

Therefore, during the plea hearing the judge should inform a criminal defendant of the potential waiver of his right to petition for appeal of his conviction, and during sentencing, the judge is required to advise the defendant of any right to appeal his sentence. What this Court must decide is whether the court's colloquy with regard to his appellate rights, or the petitioner's attorney's alleged failure to object to the Court's characterization of his appellate rights, constitute "extraordinary events" external to the petitioner that made it "impossible" for him to timely file his § 2254 petition. Harris, 209 F.3d at 33. This examination must be made with particular attention to West Virginia's well settled rules governing appeals from guilty pleas.

Based on the record as a whole, the Court finds no such extraordinary error. First, the record shows that during the plea hearing the court engaged the petitioner in the following colloquy:

THE COURT: Do you know and understand if you had gone to trial and been found guilty that your attorney, if you had one or if you could not afford one, [the] court would appoint you one, to appeal your case to the West Virginia Supreme Court of Appeals?

THE DEFENDANT: Yes, sir.

THE COURT: Do you know and understand if this court made any errors during that trial, that would be grounds for seeking appeal of your conviction to the West Virginia Supreme Court of Appeals?

THE DEFENDANT: Yes, sir.

THE COURT: Do you know and understand if I accept your plea of guilty here today you may not later withdraw your plea of guilty if you are dissatisfied with the sentence imposed by this court?

THE DEFENDANT: Yes, sir.

THE COURT: Do you know and understand if the court accepts your plea here today you may not test your conviction by way of appeal to the West Virginia Supreme Court of Appeals?

THE DEFENDANT: Yes, sir.

Dckt. 14-11 at 16.

Although the questions could have been framed more clearly, the court did not mislead the petitioner as to his appellate rights under West Virginia law. Barring issues of voluntariness, an appeal does not lie when a petitioner has pleaded guilty. A thorough examination of the plea agreements and supporting affidavits, the plea hearing transcripts, the sentencing hearing transcripts, and the judgment orders leads the Court to conclude that the judge informed the petitioner of his rights in light of his plea agreement. Therefore, the petitioner's assertion that the court improperly advised him of his appeal rights during the plea colloquy is unavailing.

Next, though the petitioner takes issue with the court's advice that he "could not test his conviction" by appeal, the petitioner did not inquire any further into his appeal rights even when given the opportunity to do so directly after the court advised the petitioner of those rights:

THE COURT: Are there any other questions you have of your attorney or anything that you have not understood today?

THE DEFENDANT:  No sir.

THE COURT:          Have you understood all the questions of this court and clearly and truthfully answered in your responses?

THE DEFENDANT: Yes.

Dckt. 14-11 at 16. The petitioner also took no steps to object to the court's prior appeal advice when given the opportunity to do so at his final sentencing hearing:

THE COURT:          Does the defendant desire to address the court personally before sentence is imposed in this matter or does he desire for you to address the court on his behalf or each of you may so address the court.

MR. UNDERWOOD:          I was just discussing that with the defendant. Do you want to address the court?

MR. LUSK:          No.

Dckt. 14-6 at 2.

While the petitioner puts forth that the court's advice was the basis for his decision not to file a state appeal, he provides no evidence that the court actually *prevented* him from filing a petition for appeal. Between the time the petitioner was re-advised of his appeal rights and his sentencing, he was adept enough to draft three *pro se* motions without his retained counsel's knowledge or participation. Cast in this light, he could similarly have investigated his appeal rights further but neglected to do so. Moreover, the petitioner had three months post-conviction to continue any research on the matter, but apparently did nothing. Considering the record as a whole, the petitioner has not shown that the appeal rights colloquy is an extraordinary event which prevented him from timely filing his § 2254 petition.

Finally, the petitioner urges that he is due equitable tolling because his attorney did not object

to the judge's line of questioning regarding his appeal rights. As discussed above, the court's advice during the plea colloquy was not misdirected. Moreover, the petitioner was on notice as to his appeal rights before the plea hearing by way of the plea affidavits that he signed and attested to in open court. The plea affidavits set forth a series of questions designed to underscore the constitutional rights ordinarily associated with a trial, and conclude with the following questions:

(36) Do you understand that if the jury finds you guilty of a crime, you have a constitutional right to appeal your conviction through your Attorney to the Supreme Court of Appeals of this state? ANSWER: Yes.

(37) Do you understand that if you plead guilty, you waive all your constitutional rights hereinbefore referred to? ANSWER: Yes.

See dckt. 14-2 at 12-13, 24-25.

Reviewing the sequence of events in order, the petitioner was made aware of his appeal rights when he reviewed and signed the plea agreement and affidavits with his attorney, and he was subsequently reminded of those rights by the judge at the plea hearing. It seems wholly reasonable that his attorney would not object to the way the judge framed the petitioner's appeal options given the context in which the judge did so. Finally, the petitioner does not assert that his attorney ever declined to enter an appeal for him. This is in stark comparison to Holland and Goedeke where the attorneys in question made false representations to their client's sustained inquires as to the progress and status of their post-conviction proceedings.[16] For these reasons, the petitioner has not shown that his attorney's lack of objection is an extraordinary event which made it impossible for him to timely

_____

[16]The Court notes that the state court found the petitioner's trial attorney to be an experienced and competent attorney. See dckt. 14-10 at 35. The state court also observed that the petitioner's attorney negotiated "a very favorable plea based upon the facts" of the case. Id.

file his § 2254 petition.

### 2.    Diligence in pursuing habeas rights

Even if the petitioner could successfully argue that "extraordinary circumstances" prevented him from timely filing his § 2254 petition, he has not shown that he acted with the necessary diligence. "Under long-established principles, petitioner's lack of diligence precludes equity's operation." Pace 544 U.S. at 419. While it is true that the petitioner filed his § 2254 petition just over one month after his state habeas appeal was denied, he also waited nearly five months after the AEDPA one year time limitation expired before he filed his state habeas petition. In all, the petitioner waited nearly seventeen months after his appeal period expired before he breached the subject of habeas corpus. Put succinctly, such a lapse of time during the pursuit of a habeas corpus petition does not demonstrate the diligence necessary to the application of the doctrine of equitable tolling. Rather, the petitioner's claims appear to be more like disappointed hindsight rather than diligent foresight thwarted by others.

### III.    Recommendation

For the reasons stated, the undersigned recommends that the respondent's motion to dismiss petition as untimely filed (dckt. 14) be **GRANTED** and the petitioner's § 2254 motion (dckt. 1) be **DENIED** and **DISMISSED with prejudice** from the active docket of this court.

In light of this recommendation, it is further recommended that the petitioner's Motion for Temporary Restraining Order, for Preliminary Injunction and for the Appointment of Counsel (dckt. 22) be **DENIED** as moot.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the

recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 21, 2010.

*John S. Kaull*

JOHN S. KAULL

UNITED STATES MAGISTRATE JUDGE